WILLIAM M. NARUS, CAB #243633
Acting United States Attorney
District of Oregon
**PARAKRAM SINGH, OSB #134871**
Assistant United States Attorney
Parkaram.Singh@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorney for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:25-cr-00108-AN |
| v. | **GOVERNMENT'S MEMORANDUM REGARDING PRETRIAL DETENTION** |
| **ADAM MATTHEW LANSKY** | |
| **Defendant.** | |

## I.  INTRODUCTION

The government requests continued pretrial detention as to defendant ADAM MATTHEW LANSKY as LANSKY presents an ongoing danger to the community and a risk of flight. LANSKY's actions, as outlined by the charges in the indictment, demonstrate how he continues to pose a danger to the safety and security of the community. LANSKY, while armed with a firearm and several destructive devices, firebombed a car dealership, in Salem, Oregon. Presently, there are no conditions or combination of conditions that would reasonably assure his appearance for future proceedings in this district and the safety of the community.

/ / /

**II.     FACTUAL BAKGROUND**

    **A.     <u>The Firebombing Attack</u>**

On January 20, 2025, at approximately 3:44 a.m., LANSKY arrived at the Tesla dealership facilities located on Mission Street, Salem, Oregon, while armed with a concealed semi-automatic rifle and about a dozen improvised incendiary devices (IID's). Soon after arriving on the Tesla property, LANSKY started throwing the IID's at vehicles and the surrounding area. A witness to the incident was charging his vehicle and saw LANSKY igniting the IID's and throwing them. The witness unplugged his vehicle and started driving away. As the witness was exiting, LANSKY saw the witness' vehicle, and pulled out the semi-automatic rifle from underneath his cloak and held it at ready till the eyewitness had driven away. LANKSY then threw a rock at the showroom window, shattering the glass and then threw an ignited device into the showroom. Finally, LANSKY threw more IID's at vehicles before fleeing. LANSKY is pictured in the images below:



**Government's Memorandum Regarding Pretrial Detention**              Page 2



Tesla Motors estimates they suffered approximately $500,000 in damages as a result of the attack.

The IID's used were made from glass wine bottles filled with gasoline. Styrofoam, or a similar substance material was also located inside the devices. Cloth was wrapped around the base of each device and secured by paracord. Investigators located four additional devices that were placed in the northeast corner of the Tesla service parking lot.

  B.  **<u>The Shooting Attack (uncharged conduct)</u>**

On February 19, 2025, the same Tesla center was attacked again, this time with a firearm. Multiple rounds were fired into the Tesla center causing damage. At the scene, officers observed projectiles believed to be spent bullets, bullet fragments, and several projectile impacts. The bullets penetrated to the interior floor space of the structure and made impact in areas that would be populated with customers and employees during business hours. Based on surveillance video

**Government's Memorandum Regarding Pretrial Detention**        **Page 3**

review, it is believed that the shooting took place at approximately 03:53 a.m. There was a security guard on the premises outside the structure-- who did not become aware of the shooting immediately. Investigators believe that LANSKY used the same firearm that he carried during the firebombing during this shooting attack. A firearm matching the characteristics of the firearm seen on surveillance footage during the arson attack was seized from LANSKY's apartment during a search of the premises.  Ballistics testing is ongoing, and the local District Attorney's Office is reviewing the investigation for potential charges against LANSKY.

### III.   PROCEDURAL BACKGROUND

On March 18, 2025, a federal grand jury returned a three-count indictment charging LANSKY with two counts of Attempted Arson of Property Used in Interstate Commerce in violation of 18 U.S.C. § 844(i), and Unlawful Possession of an Unregistered Destructive Device in violation of 26 U.S.C. § 5861(d).  LANSKY has been in custody since his arrest on March 4, 2025.  The government seeks the continued detention of LANSKY pending trial in the District of Oregon on this matter.

### IV.   LEGAL STANDARDS

#### A.   **The Government Qualifies for a Detention Hearing Under the Bail Reform Act**

The Bail Reform Act authorizes a detention hearing under 18 U.S.C. §§ 3142(f)(1) or (f)(2).  A detention hearing is appropriate if a defendant is accused of one of the crimes listed in section 3142(f)(1), all three counts in the indictment authorize a detention hearing under 18 U.S.C. § 3142(f)(1)(E).

For the reasons set forth below, LANSKY is a danger to the community because the charged offenses involve the use of a firearm and the use and possession of destructive devices;

and a flight risk under section 3142(f)(2), in part because of the nature of the offense charged, the severity of the potential sentence facing LANSKY, and because of LANSKY'S physical and mental condition, and personal circumstances.

### B.     LANKSY Should Remain Detained

#### 1.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 *et seq.*, federal courts are required to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. *See* 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. *See United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990). A finding of risk of nonappearance must be supported by a preponderance of the evidence, *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986), meaning the Government "must demonstrate that it is more likely than not that there is a serious *risk* that the defendant will flee, not that it is more likely than not that the defendant *will* flee." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138-39 (D. Idaho 2023) (emphasis in original.)

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). As discussed below, these factors weigh heavily against pretrial release.

**Government's Memorandum Regarding Pretrial Detention**     **Page 5**

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. *See* 18 U.S.C. § 3142(f)(2); *Reem v. Hennessy*, 2018 WL 1258137, at *2 (N.D. Cal. Mar. 12, 2018); *see also United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000) (holding that the government is entitled to proceed by proffer in detention hearings). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. *Id.* at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." *Id.* (internal quotation marks omitted).

Each of the relevant statutory factors in the detention analysis underscore that LANSKY presents both an ongoing danger to the community and a serious risk of flight if released.

### a.  The Nature and Circumstances of the Offenses Charged

The first factor—the nature and circumstances of the offense charged—contemplates consideration of not only the specific acts and charges alleged in the indictment, but also the potential penalty that may be imposed if the person is convicted. *See, e.g.,* U*nited States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (noting defendants faced respectively penalties of 35 and 70 years if convicted).

Here, the nature and circumstances of the offenses are undeniably serious, and the penalties are appropriately severe. LANSKY faces a significant sentence in this case including a mandatory minimum sentence of five-years imprisonment, subject to upward departures—and a statutory maximum sentence of 20 years in prison. *See Townsend*, 897 F.2d at 995; *see also United States v. Cisneros*, 328 F.3d 610, 618 (l0th Cir. 2003) (holding defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond). This fact, combined with the fact that LANSKY was involved in a second attack

**Government's Memorandum Regarding Pretrial Detention**                                                **Page 6**

where several bullets were fired into a structure heightens the risk to the safety of the community, and puts our community in danger.  LANSKY is a competitive shooter and a former member of the Socialist Rifle Association. He is skilled and well-practiced in the use of firearms and combat scenarios. The IID's used by LANSKY were all manufactured by him using everyday items, empty glass bottles, gasoline, fabric, etc., all these items remain easily accessible to LANSKY in the community if released.

The day of the arson attack is also relevant, it was the early morning on the same day as the Presidential Inauguration.  Undeniably, this conducted has already placed the community at significant risk and weighs heavily in favor of detention.

### b. The Weight of the Evidence

The second factor is the weight of the evidence.  Although section 3142(g)(2) specifically enumerates weight of the evidence as a consideration in determining release, the Ninth Circuit has held that it is to be afforded less weight than the other statutory factors.  *See Townsend*, 897 F.2d at 994; *Winsor*, 785 F.2d at 757.  The weight of the evidence is, however, an important and relevant consideration in the Court's evaluation of whether a defendant "will fail to appear or will pose a danger to any person or to the community.  *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

Here, the weight of the evidence against LANSKY is strong.  Evidence of each offense was recovered from LANSKY's residence, including the clothing he wore during the offense. LANSKY's fingerprints were located on some of the unexploded IID's.  The evidence of LANSKY's guilt is strong, it provides "a considerable incentive to flee."  *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993); *see also Motamedi*, 767 F.2d at 1408; *United States v.*

*Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (where "the evidence against defendants is strong, the incentive for relocation is increased").

          c.        The Defendant's History and Characteristics

Consideration of the history and characteristics of the person under section 3142(g)(3) includes the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law.  *See* § 3142(g)(3)(A) and (B).

Critically, the government anticipates that LANSKY, while arguing for release will argue that he suffers from Bi-Polar disorder and that at the time of the attacks, he was unmedicated or otherwise untreated.[1]  LANKSY's mental condition is part of the government's concern. His current desire to adhere to his treatment plan could change at any time bringing with it a return to dangerous and unpredictable behavior, thereby, heightening the risk of danger and the risk of non-appearance.

The investigation to date shows that LANSKY has limited income streams. He has worked with audio and sound systems, but the viability of ongoing employment is unknown to the government at this time.

/ / /

/ / /

---

[1] The government was made aware that LANSKY has been evaluated and diagnosed with Bi-Polar disorder and that a formal medical report is anticipated in the coming weeks.

**Government's Memorandum Regarding Pretrial Detention**        **Page 8**

     d.  <u>Nature and Seriousness of the Danger to the Community</u>

In evaluating the nature and seriousness of the danger a defendant poses to the community, the Court may consider, *inter alia*, the defendant's criminal history; whether the crimes charged required intelligence, planning, capital, facility in deception, international communications, or international motives; and whether the charged crimes carry severe penalties.[2]  *See Townsend*, 897 F.2d at 996.

Here, LANSKY is charged with serious crimes[3] that required planning, attention to detail, and a significant pre-meditation. LANSKY took several steps to try to conceal his identity, however, was unsuccessful in the end.  The scale of the attack was significant, and LANSKY was prepared to do more if confronted, as evidenced by his possession and use of the firearm.  Pulling out a firearm and pointing it at another person while firebombing a business is an extraordinary risk for the community.

The role of possible coconspirators, if any, is still under investigation. The investigation has revealed that LANSKY has used end-to-end encrypted communication platforms in the recent past and the extent of planning of these attacks is not yet fully known to investigators.

---

[2] Other factors listed in *Townsend*, such as the defendant's prior performance on court-imposed supervision; whether the defendant illegally possessed firearms or large quantities of prohibited drugs; and, whether the defendant was on probation, parole, supervised release, or subject to conditions of pretrial release, are inapplicable here.  *Townsend*, 897 F.2d at 996.

[3] LANSKY is not charged with a federal crime of violence, however, that fact is not necessary to make him a danger to the community. "The Ninth Circuit [has] held . . . that danger to the community may encompass pecuniary or economic harm." *United States v. Possino*, 2013 WL 1415108, at *7 (C.D. Cal. Apr. 8, 2013) (citing *United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992)); *United States v. Cohen*, 2010 WL 5387757, at *9 (N.D. Cal. Dec. 20, 2010) ("Financial harm can constitute community danger, where there is a showing that defendant's fraudulent activity is ongoing or defendant has a propensity to continue fraudulent activity."); *see also United States v. Madoff*, 586 F. Supp. 2d 240, 252 (S.D.N.Y. 2009) (discussing cases).

**Government's Memorandum Regarding Pretrial Detention**        **Page 9**

However, as noted above, the scale and the high-risk of the two incidents by themselves is significant enough to warrant detention.

LANSKY wished to send a loud message on Inauguration morning, and the means he chose were dangerous not just in their physical risks to anyone present, but also through the psychological impact on the community on a day of democratic significance to the United States.

## V.     DEFENDANT'S RELEASE PLAN

As of the time of this filing, the government is not aware of a formal release plan. The government has been informed by defense counsel that LANSKY will likely reside with a supportive member of his community and will engage in treatment for his mental health disorder. It is the government's position that LANSKY's residential plan is tenuous, his employment plan, if any, is unknown to the government, and government is not confident that any combination of conditions can be crafted to mitigate the risk of flight and danger to the community.

## VI.     REQUEST FOR STAY OF RELEASE

If the Court finds that release is appropriate, the government requests that the Court stay the release order so that the government can appeal that decision to the district judge. *See* Fed. R. Crim. Proc. 47 (which governs criminal motion practice generally). Here, a stay would be needed to enable this district judge to meaningfully review the any release order before it took effect. Without a stay, LANSKY would be released following his initial appearance. This Court has inherent power to control its docket "in a manner which will promote economy of time and effort for itself, counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Entry of a stay is one of those inherent powers. *Id.*

/ / /

/ / /

## VII. CONCLUSION

LANSKY presents a serious danger to the community and a risk of flight that no set of release conditions can mitigate. For these reasons, the government respectfully submits that the Court should enter a permanent order of detention pending trial for LANSKY.

Dated: July 9, 2025                                Respectfully submitted,

                                                   WILLIAM M. NARUS
                                                   Acting United States Attorney

                                                   */s/ Parakram Singh*
                                                   PARAKRAM SINGH, OSB #134871
                                                   Assistant United States Attorneys