WILLIAM M. NARUS, CAB #243633
Acting United States Attorney
District of Oregon
**PARAKRAM SINGH, OSB #134871**
Assistant United States Attorney
Parkaram.Singh@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorney for United States of America

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:25-cr-00108-AN |
| v. | **GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER** |
| **ADAM MATTHEW LANSKY** | |
| **Defendant.** | |

## I.   INTRODUCTION

The United States respectfully moves this Court to revoke the order of release in this case (ECF No. 23) entered by the Honorable Stacie F. Beckerman, and to keep the defendant, Adam Matthew Lansky (LANSKY), detained pending trial because the United States has presented clear and convincing evidence that LANSKY presents a danger to the community and has shown by a preponderance of the evidence that LANSKY presents a risk of non-appearance.

## II.   PROCEDURAL BACKGROUND

On March 18, 2025, a federal grand jury returned a three-count indictment charging LANSKY with two counts of Attempted Arson of Property Used in Interstate Commerce in violation of 18 U.S.C. § 844(i), and Unlawful Possession of an Unregistered Destructive Device

**Government's Motion to Revoke Release Order**                                                                                              Page 1

in violation of 26 U.S.C. § 5861(d). LANSKY has been in custody since his arrest on March 4, 2025. LANSKY did not seek release after his arraignment on the indictment and the Court entered an order detaining LANSKY without prejudice. LANSKY requested a hearing requesting his release on July 9, 2025, and was released by Judge Beckerman. The government seeks a review of this release decision and the continued detention of LANSKY pending trial.

**III.    LEGAL STANDARD**

Review of a magistrate judge's release order is *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The Court, however, "is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *Id*. at 1193. Rather, the court should "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id*.

The Bail Reform Act authorizes a detention hearing under 18 U.S.C. §§ 3142(f)(1) or (f)(2). A detention hearing is appropriate if a defendant is accused of one of the crimes listed in section 3142(f)(1). All three counts in this indictment authorize a detention hearing under 18 U.S.C. § 3142(f)(1)(E).

The Bail Reform Act provides that defendants shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government bears the burden of establishing risk of flight by a mere preponderance of the evidence. *See United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

18 U.S.C. § 3142(g) sets forth the statutory factors to consider: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or

involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

Finally, the Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f).  Accordingly, both the government and the defense may present evidence by proffer or hearsay.  *Winsor*, 785 F.2d at 756; *see also United States v. Bibbs*, 488 F. Supp. 2d 925, 925-26 (N.D. Cal. 2007).

## IV.    FACTUAL BACKGROUND

### A.    The Firebombing Attack

On January 20, 2025, at approximately 3:44 a.m., LANSKY arrived at the Tesla dealership facilities located on Mission Street, Salem, Oregon, while armed with a concealed semi-automatic rifle and about a dozen improvised incendiary devices (IID's). Soon after arriving on the Tesla property, LANSKY started throwing the IID's at vehicles and the surrounding area. A witness to the incident was charging his vehicle and saw LANSKY igniting the IID's and throwing them. The witness unplugged his vehicle and started driving away. As the witness was exiting, LANSKY saw the witness' vehicle, and pulled out the semi-automatic rifle from underneath his cloak and held it at ready till the eyewitness had driven away. Undeterred, LANSKY continued his attack and threw a rock at the showroom window, shattering the glass. LANSKY then threw an ignited device into the showroom. Finally, LANSKY threw more IID's at vehicles before fleeing. LANSKY is pictured in the images below:

**Government's Motion to Revoke Release Order**                                                           **Page 3**





Tesla Motors estimates they suffered approximately $500,000 in damages as a result of the attack.

The IID's used were made from glass wine bottles filled with gasoline. Styrofoam, or a similar substance material was also located inside the devices (that acts like a sticky binding agent that adheres to a surface and burns). Cloth was wrapped around the base of each device

**Government's Motion to Revoke Release Order**                                    **Page 4**

and secured by paracord. Investigators located four additional devices that were placed in the northeast corner of the Tesla service parking lot.

      **B.**      **The Shooting Attack (uncharged conduct)**

On February 19, 2025, the same Tesla center was attacked again, this time with a firearm. Multiple rounds were fired into the Tesla center causing damage. At the scene, officers observed projectiles believed to be spent bullets, bullet fragments, and several projectile impacts. The bullets penetrated to the interior floor space of the structure and made impact in areas that would be populated with customers and employees during business hours. Based on surveillance video review, it is believed that the shooting took place at approximately 03:53 a.m. There was a security guard on the premises outside the structure-- who did not become aware of the shooting immediately. Investigators believe that LANSKY used the same firearm that he carried during the firebombing during this shooting attack. A firearm matching the characteristics of the firearm seen on surveillance footage during the arson attack was seized from LANSKY's apartment during a search of the premises. Ballistics testing is ongoing, and the local District Attorney's Office is reviewing the investigation for potential charges against LANSKY.

**V.**      **NO CONDITIONS CAN REASONABLY ASSURE DEFENDANT'S APPEARANCE AS REQUIRED AND PROTECT THE COMMUNITY FROM THE DANGER POSED BY DEFENDANT'S RELEASE**

This Court cannot fashion any combination of conditions that would reasonably assure LANSKY's appearance at future proceedings. LANSKY's personal circumstances and the nature and gravity of his offenses render him too significant of a risk and too incentivized to flee, and no conditions could effectively mitigate that risk.

In making this determination, the court should consider the factors set forth in Section 3142(g), including (1) the nature and seriousness of the offense charged; (2) the weight of the

evidence against defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *Winsor*, 785 F.2d at 757.

### A.    Factor 1:  LANSKY Is Facing Significant and Serious Charges

LANSKY has been charged with serious crimes—Attempted Arson and Unlawful Possession of an Unregistered Destructive Device.  During the commission of his crime, he used several IID's, burned cars and damaged buildings while unlawfully possessing destructive devices. The commission of this crime also involved the use of a semi-automatic rifle. The firearm use is a significant fact because LANSKY only accessed his firearm once he saw that someone else, the witness, was in his area. These are serious offenses, as evidenced by the fact that they carry significant penalties. The Arson charges carry a mandatory minimum five-year sentence with a 20-year statutory maximum.

### B.    Factor 2:  The United States Has Strong Evidence of Defendant's Guilt

The weight of the evidence is overwhelming.  The United States has video footage showing LANSKY, while masked, committing the firebombing as well as eyewitness testimony. The government has recovered LANSKY's fingerprints from IIDs as well as recovered several items that he possessed and wore during the attack from his residence.  In short, the United States has strong evidence ready to prove LANSKY's guilt at trial beyond a reasonable doubt.

### C.    Factor 3:  Defendant's History and Characteristics Show He is a Danger and Presents a Risk of Nonappearance

LANSKY's history and characteristics also favor detention. Analysis of this factor includes the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history

relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law.  *See* § 3142(g)(3)(A) and (B).

LANSKY has limited criminal history and enjoys the support of friends and members of the community. He has resided in this district for several years and had partial custody of his young child. However, LANSKY has had significant struggles with his mental health and wellbeing for several years. This instability has culminated itself in a dangerous action and the government is not persuaded that a change in his prescription is sufficient to mitigate such significant risks.  His current employment status remains speculative and that limits his financial resources. LANSKY plans to reside with a friend, however a friend cannot be expected to appropriately monitor LANSKY's actions or whereabouts.

Finally, another aspect of LANSKY's history and characteristics is his proficiency with firearms. LANSKY is someone who has participated in several shooting competitions and is well trained in the use of firearms in combat scenarios.

**D.     Factor 4:  Defendant Remains a Danger to the Community**

In evaluating the nature and seriousness of the danger a defendant poses to the community, the Court may consider, *inter alia*, the defendant's criminal history; whether the crimes charged required intelligence, planning, capital, facility in deception, international communications, or international motives; and whether the charged crimes carry severe

/ / /

/ / /

**Government's Motion to Revoke Release Order**     **Page 7**

penalties.[1]  *See United States v. Townsend*, 897 F.2d 989, 996 (9th Cir. 1990).  LANSKY planned and executed two sperate attacks. The attacks involved significant planning, deception, and intelligence. On the date of the charged conduct, he utilized IIDs he made himself using everyday items like glass bottles, fabric, and gasoline. He took care to stage items in the perimeter of the facility before the firebombing.  It is not feasible for pre-trial services or his friends to limit his access to such items. LANSKY already possesses the requisite knowledge on how to build these incendiary devices and he has shown his willingness to use them.

The charges in this case involve mandatory minimums with a 20-year statutory maximum. When taken together with defendant's second incident involving firearm use, history with firearms, residential and employment instability, and significant mental health issues, the there is a tremendous danger to the community if he is released.

A summary of LANSKY's proffered argument for release is that he was previously misdiagnosed and that his mental health diagnosis has changed while he was in federal custody. LANSKY now has a revised medical prescription that has addressed the Bi-Polar manic state that led to these incidents. As a result, he can be expected to behave rationally and in compliance with court orders.

What concerns the government is that the efficacy of the current treatment plan remains speculative and untested in the community and without a means by which to ensure that he follows through with the treatment obligations, the risk posed by this experiment to the safety of the community is too great.

---

[1] Other factors listed in *Townsend*, such as the defendant's prior performance on court-imposed supervision; whether the defendant illegally possessed firearms or large quantities of prohibited drugs; and, whether the defendant was on probation, parole, supervised release, or subject to conditions of pretrial release, are inapplicable here.  *Townsend*, 897 F.2d at 996.

**Government's Motion to Revoke Release Order**                                                              **Page 8**

A *de novo* review of the Section 3142(g) factors demonstrates by clear and convincing evidence that LANSKY is a danger to the community and more than a preponderance of the evidence that LANSKY will fail to appear when ordered to do so:

| Factor Favoring Detention | Factors Favoring Release |
|---|---|
| Serious crimes involving arson and the unlawful possession of a destructive device | Recommendation from Mental Health Diagnosis and a revised medication plan |
| Residential and employment instability | Support of friends and family |
| Significant mental health concerns | |
| Weight of the evidence | |
| Pre-meditated attacks on the business premises involving intelligence, planning, and skill, demonstrating continued dangerousness | |
| Charged crimes carry mandatory minimum sentences and a 20-year statutory maximum | |

Accordingly, the Court should revoke LANSKY's release order and order that he be detained pending trial.

Dated: July 10, 2025

Respectfully submitted,

WILLIAM M. NARUS
Acting United States Attorney

*/s/ Parakram Singh*
PARAKRAM SINGH, OSB #134871
Assistant United States Attorneys